951 P.2d 1235

Donna BACA, Appellant,

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY,**
an Agency, Appellee.

No. 1 CA–UB 97–0062.

Court of Appeals of Arizona,
Division 1, Department E.

Dec. 16, 1997.

Redesignated as Opinion and
Ordered Published Jan. 13, 1998.

Community Legal Services by Robert Todd, Phoenix, for Appellant.

Grant Woods, Attorney General by Kathryn L. Petroff, Assistant Attorney General, Phoenix, for Appellee.

## OPINION

GERBER, Judge.

Donna Baca ("Baca") appeals from the Department of Economic Security ("DES") Ap-

peals Board's Decision upon Review affirming the Board's prior finding that Baca's husband, Atenogenes Baca ("Atenogenes"), was a member of her household whose resources would be included for determining food stamp eligibility. For the reasons set forth, we affirm.

## FACTS AND PROCEDURAL HISTORY

Baca applied to DES for food stamps for a household consisting of herself, her three children, and a family friend who was living in her home at the time. Baca did not list her husband, Atenogenes, on the application. DES requested additional information from Baca regarding the income and resources of Atenogenes. Baca informed DES that she was unable to fully comply with this request and that she and Atenogenes were not "together." A DES investigator, however, concluded that Atenogenes did live at Baca's home. DES then denied Baca's request for food stamps, stating that her resources exceeded the maximum allowable under the food stamp program.[1]

Baca appealed this denial of benefits and a hearing was conducted. Following testimony from the DES investigator, Baca, and Baca's sister, the hearing officer upheld the denial of food stamps to Baca's household due to excess resources. The hearing officer found that a 1995 Chevrolet Astro van jointly purchased by Baca and Atenogenes should be counted toward Baca's household. At the hearing, DES's representative indicated that the sole basis for the Agency's conclusion of excess resources was the household's ownership of this van.[2]

Baca then appealed to the DES Appeals Board. The Board set aside the hearing officer's decision because of incomplete findings of fact, reasoning and conclusions of law. The Board concluded that the hearing officer had erred in failing to fully analyze whether Atenogenes was a member of Baca's household under 7 C.F.R. 273.1(a) and whether the van was an inaccessible resource under Arizona DES Food Stamp Manual 70–302.11(A)(5).[3] However, the Board made its own finding that, under the facts presented at the hearing, Atenogenes was living with Baca and therefore was a member of her household. As a result, the value of the jointly-owned van was includable for the household. The Board remanded for further investigation of the equity value of the van and for reprocessing of Baca's application with Atenogenes being considered a member of Baca's household.

Baca then filed a Request for Review, challenging the portion of the Board's decision that found that Atenogenes was a member of Baca's household. The Board affirmed its decision upon review, and Baca timely appealed to this court. We have jurisdiction pursuant Arizona Revised Statutes Annotated section 41–1993 (Supp.1997).

## DISCUSSION

Baca argues that the Appeals Board misapplied federal law in concluding that Atenogenes was a member of her household for purposes of food stamp eligibility. On appeal, this court is free to draw its own conclusions in determining if the Board properly interpreted the law; however, the

1. In order to be eligible for food stamps, the maximum allowable resources of all members of the household must not exceed $2000. Arizona DES Food Stamp Manual 70–301.01.

2. Although the hearing officer attributed the Astro van to Baca's household, he did not clearly find that Atenogenes was living with Baca and was therefore a member of her household. Even if Atenogenes was not considered a member of Baca's household, the jointly purchased Astro van would be a resource of Baca's household unless it was inaccessible to her. *See* 7 C.F.R. § 273.8(d) (1996); Arizona DES Food Stamp

Manual 70–301.05.A. Although this issue is not raised on appeal, Baca contends that the facts clearly support a finding that the vehicle was not accessible to her. If Atenogenes was a member of Baca's household, the van would be a resource of the household regardless of its accessibility to Baca.

3. This provision of the manual states that a resource with an equity value of less than $1,000 is considered an inaccessible resource.

Board's interpretation of statutes and DES regulations is entitled to great weight. *See Capitol Castings v. Arizona Dept. of Economic Sec.*, 171 Ariz. 57, 60, 828 P.2d 781, 784 (App.1992). In addition, we view the evidence in a light most favorable to upholding the Board's decision and "will affirm that decision if it is supported by any reasonable interpretation of the record." *Prebula v. Arizona Dept. of Economic Sec.*, 138 Ariz. 26, 30, 672 P.2d 978, 982 (App.1983).

■ Under the federal food stamp program, eligibility for receipt of food stamps is determined by a "household," rather than an individual basis. *See* 7 U.S.C.A. §§ 2013(a) (1988) and 2014 (Supp.1997). Entitlement to and amounts of benefits are determined by the number of persons in a household and by the income and resources of household members. A "household" is generally defined as an individual who lives alone or "a group of individuals who live together and customarily purchase food and prepare meals together for home consumption." 7 C.F.R. § 273.1(a)(1)(i) and (iii) (1996). Spouses who live together are presumed to customarily purchase food and prepare meals together, even if they do not do so. 7 C.F.R. § 273.1(a)(2)(i)(A). Baca does not dispute that Atenogenes is her spouse. Therefore, it is presumed that he is a member of her household, for food stamp eligibility purposes, if he "lives with" her.

Neither federal nor state statutes or regulations define the term "living together." Congress delegated to the United States Secretary of Agriculture the authority to decide how to define the term "living together." 7 U.S.C.A. § 2013(c). The Secretary has not defined the term, but has stated that the determination of which individuals are living together should be decided through "the application of a reasonable judgment based on the circumstances of a particular living arrangement." 47 Fed.Reg. 52,328–01 (1982); *see also Robinson v. Block,* 869 F.2d 202, 213 (3rd Cir.1989).

■ In its first decision, the Board concluded that, based on the facts in this case, Atenogenes lived with Baca and therefore was a member of her household for food stamp eligibility purposes. Baca, however, contends that, in its second decision affirming the first, the Board recanted its finding that Baca and Atenogenes lived together when it stated as follows:

> The greater weight of the credible evidence in the case establishes that the Claimant's husband was a member of the household. Although counsel contends that the Federal Regulations do not define "living together", it is not necessary in the Food Stamp program, as in some assistance programs; it is necessary only to establish that the husband was part of the household. In this case, even if the Claimant and her husband were not "living together", the overwhelming weight of the credible evidence in the case establishes that, for Food Stamp purposes, the Claimant's husband was a member of the Claimant's household.

Baca claims that the Board's reasoning is circular and misstates relevant law. She contends that the Board ignored the critical threshold issue whether the two spouses actually lived together and summarily concluded that Atenogenes was a member of Baca's household.

DES admits in its brief that the Board's statement that "living together" is not necessary for determination of inclusion in a household for food stamp eligibility purposes seems contrary to federal law. We agree. However, the Board on review specifically affirmed its prior decision which clearly found that Baca and Atenogenes were living together.

■ Even if the Appeals Board did misstate the law in its decision on review, this court will affirm if it nonetheless reached the right result. *See Orr v. Arizona Dept. of Economic Sec.*, 158 Ariz. 181, 185, 761 P.2d 1085, 1089 (App.1988). We conclude that there was sufficient evidence to support the Board's original finding that Baca and Atenogenes were living together.

It was undisputed by Baca that she and Atenogenes together bought the house in which she and the children lived at the time of her food stamp application. She testified that he moved out of the house when they separated more than four years prior to the application. However, she admitted that he came to the house to see his two children every day between three and nine o'clock and stayed until one or two o'clock in the morning. He sometimes took the children out for meals. He spent most Friday nights and some Saturday nights at the house. Baca told Atenogenes' employer that she and Atenogenes were living together so that the employer would stop withholding child support payments from his check. Atenogenes regularly picked up his mail from the house. Some of his clothes were in a closet in the house. Baca and Atenogenes owned two vehicles together. Additionally, Atenogenes listed Baca's P.O. Box or street address as his own address with his employer, on the home mortgage, on his driver's license and on at least two vehicle liens. Baca had explanations for many of the above facts and admitted into evidence statements from various people stating that she and Atenogenes were not living together.[4] However, the Board nevertheless could have reasonably concluded from the facts that Baca and her husband were living together at the time she applied for food stamps.

The decision of the Appeals Board is affirmed.

FIDEL, P.J., and THOMPSON, J., concur.

---

4. Baca contends that the Board inexplicably disregarded her evidence. However, the record demonstrates that the Board acknowledged Baca's proferred evidence. The Board noted that the short, handwritten statements submitted by Baca in which various parties stated without elaboration that she and Atenogenes were not living together were not entitled to much probative weight. It was within the Board's discretion to weigh the evidence.